# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TEQUILA L. COLE,

        Plaintiff,

v.

CAROL BOEHNLEIN,

        Defendant.

Case No. 22-CV-1408-JPS

**ORDER**

Plaintiff Tequila L. Cole, an inmate confined at Taycheedah Correctional Institution ("TCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendant Carol Boehnlein ("Boehnlein") violated her constitutional rights by performing an illegal strip search. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee, addresses her motion to appoint counsel, and screens her complaint.

1. **MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when she filed her complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with her case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). She must then pay the balance of the $350 filing fee over time, through deductions from her prisoner account. *Id.*

On January 4, 2023, the Court ordered Plaintiff to pay an initial partial filing fee of $52.35. ECF No. 8. Plaintiff paid that fee on February 1, 2023. The Court will grant Plaintiff's motion for leave to proceed without

prepaying the filing fee. ECF No. 2. She must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2. SCREENING THE COMPLAINT

    2.1    Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived her of a right secured by the Constitution or the laws of the United States and that whoever deprived her of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799

Page 2 of 11
Case 2:22-cv-01408-JPS    Filed 04/12/23    Page 2 of 11    Document 9

F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff's allegations stem from an alleged illegal search of her person at TCI on September 7, 2022. ECF No. 1 at 2. Plaintiff was waiting to see PSU and Boehnlein stated that she saw another prisoner pass Plaintiff something. *Id.*[1] Boehnlein proceeded the start of a "pat search." *Id.* Boehnlein stood behind Plaintiff and started at her chest area, arms, waistline, and then rubbed down Plaintiff's legs with an open palm. *Id.* While rubbing up Plaintiff's right leg, Boehnlein "chopped" Plaintiff with her hand once she reached the groin area, causing her pant leg to raise from the force. *Id.*

Boehnlein then stood up and came from Plaintiff's right side and placed her open palm on top of Plaintiff's pelvic area and tapped on the top of Plaintiff's vagina two times with her fingers. *Id.* at 2-3. Boehnlein asked what was in Plaintiff's underwear and to hand it over. *Id.* at 3. Plaintiff stated that it was a handwritten letter and "refused to wait on supervisor." *Id.*

Captain McCan arrived and Plaintiff tried explaining the incident. *Id.* After being told to stop talking several times, McCan finally stated that Sgt. could touch her vagina during a pat scan. *Id.* McCan called responders

---

[1] The Court notes that Plaintiff's handwriting is at times difficult to decipher. The Court has used its best judgment and effort to accurately reflect Plaintiff's allegations.

Page 3 of 11
Case 2:22-cv-01408-JPS   Filed 04/12/23   Page 3 of 11   Document 9

and C.O. Wertel, Garcia, and Saur responded. *Id.* C.O. Saur asked Plaintiff where the "kite" was located. *Id.* Plaintiff stated the "location was in the midsection/center of vagina underwear." *Id.* Saur placed her hand on Plaintiff's vagina, reaching from Cole's left side and told McCan he wanted Plaintiff to remove it. *Id.* McCan said no. *Id.* Plaintiff was transported to the restrictive housing unit where she received a strip search and placed in temporary lock-up. *Id.*

Plaintiff requested psychological services. Plaintiff explained to PSU DeBruin what happened and asked for coping skills. *Id.* DeBruin filed a PREA report after their session. *Id.*

### 2.3    Analysis

The Court finds that Plaintiff's complaint as alleged fails to state a claim for an unconstitutional strip search, but will grant Plaintiff leave to amend the complaint. The Eighth Amendment safeguards prisoners against searches that correctional officers subjectively intend as a form of punishment. *Henry v. Hulett*, 969 F.3d 769, 781 (7th Cir. 2020). A strip search of a prisoner violates the Eighth Amendment if its purpose is "maliciously motivated, unrelated to institutional security, and hence totally without penological justification." *Chatman v. Gossett*, 766 F. App'x 362, 364 (7th Cir. 2019) (quoting *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004)). A strip search is penologically justified when it is reasonably related to finding contraband that threatens the safety and security of the prison. *Id.* (citing *Peckham v. Wis. Dep't of Corr.*, 141 F.3d 694, 695, 697 (7th Cir. 1998)); *Del Raine v. Williford*, 32 F.3d 1024, 1029, 1041 (7th Cir. 1994)).

The Eighth Amendment focuses on the defendants' subjective state of mind. *Henry*, 969 F.3d at 781. But the Fourth Amendment focuses on objective reasonableness, and thus "a defendant's subjective state of mind

is irrelevant to a court's Fourth Amendment analysis." *Id.* "The Fourth Amendment thus protects prisoners from searches that may be related to or serve some institutional objective, but where guards nevertheless perform the searches in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." *Id.* When evaluating a prisoner's claim involving a strip search under the Fourth Amendment, a court "must assess that search for its reasonableness, considering 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Applying that standard here, Plaintiff's complaint does not contain sufficient factual allegations to suggest an unconstitutional search occurred. Plaintiff's allegations suggest that the search occurred as a result of Boehnlein believing another prisoner had passed something to Plaintiff. There are no facts to suggest that Boehnlein's search was maliciously motivated or unrelated to institutional security, in violation of the Eighth Amendment. Similarly, as currently pled, Plaintiff's allegations do not suggest that Boehnlein conducted the search in an unreasonable manner or location, or for an unreasonable purpose, in violation of the Fourth Amendment. As such, the Court will dismiss Plaintiff's complaint for the failure to state a claim. The Court will allow Plaintiff the opportunity to amend the complaint to cure the deficiencies identified in this Order, if applicable.

When writing her amended complaint, Plaintiff should provide the Court with enough facts to answers to the following questions: (1) Who violated her constitutional rights?; (2) What did each person do to violate her rights?; (3) Where did each person violate her rights?; and (4) When did each person violate her rights? Plaintiff's amended complaint does not need

Page 5 of 11
Case 2:22-cv-01408-JPS   Filed 04/12/23   Page 5 of 11   Document 9

to be long or contain legal language or citations to statutes or cases, but it does need to provide the Court and each Defendant with notice of what each Defendant allegedly did or did not do to violate her rights.

The Court is enclosing a copy of its amended complaint form. Plaintiff must list all of the defendants in the caption of her amended complaint. She should use the spaces on pages two and three to allege the key facts that give rise to the claims she wishes to bring, and to describe which defendants she believes committed the violations that relate to each claim. If the space is not enough, Plaintiff may use up to five additional sheets of paper. The amended complaint takes the place of the prior complaint and must be complete, without reference to her prior complaint.

Plaintiff is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If the amended complaint is received, it will become the operative complaint in this action, and the Court will screen it in accordance with 28 U.S.C. § 1915A.

3. **APPOINTMENT OF COUNSEL**

The Court will deny Plaintiff's motion for the appointment of counsel, ECF No. 7, without prejudice. As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person

unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) [s]he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of a plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When a court recruits a lawyer to represent a pro se party, the lawyer takes the case pro bono. Unlike a lawyer appointed to represent a criminal defendant during her prosecution, who is paid by the government for the work, an attorney who takes a prisoner's civil case pro bono has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice in the District. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain

litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful § 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for pro bono appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent pro se plaintiffs on appeal. *See, e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the pro se appellant); *McCaa*, 893 F.3d at 1029 (same).

Additionally, it must be remembered that, when a court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are a court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, a court asks whether the litigant has made "reasonable" efforts to obtain her own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district court judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, No. 09-cv-90-bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call her work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, she has at least made a good-faith effort to avoid those costs by getting a lawyer herself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking her case. If she learns that some of the lawyers she has contacted do not, she should reach out to others before she concludes that no one will help her.

Plaintiff has not satisfied the first prong. Plaintiff asks for counsel but makes no mention and provides no evidence of attempting to secure counsel on her own. However, even if Plaintiff had satisfied the first prong, the Court would still deny her motion because the Court believes she has the capacity to prepare an amended complaint, which is the only task currently before her. Nothing suggests that Plaintiff lacks the capacity to follow the Court's guidance in filing an amended complaint. The Court will therefore deny Plaintiff's motion, without prejudice, and if the case proceeds past screening, the Court will reconsider any renewed motion for counsel at a later time.

4.  **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 7, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that the complaint fails to state a claim;

**IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint that complies with the instructions in this Order on or before **May 12, 2023.** If Plaintiff files an amended complaint by the deadline, the Court will screen the amended complaint under 28 U.S.C. § 1915A. If Plaintiff does not file an amended complaint by the deadline, the Court will dismiss this case based on her failure to state a claim in her original complaint and will issue her a "strike" under 28 U.S.C. § 1915(g);

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a blank prisoner amended complaint form and a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from her institution trust account the $297.65 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with her remaining balance to the receiving institution; and

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined.

Dated at Milwaukee, Wisconsin, this 12th day of April, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

> Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.
>
> Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:
>
> > Office of the Clerk
> > United States District Court
> > Eastern District of Wisconsin
> > 362 United States Courthouse
> > 517 E. Wisconsin Avenue
> > Milwaukee, Wisconsin 53202
>
> **DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.
>
> Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.